UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR EDWARD SMITH,

            Plaintiff,

-against-

JP MORGAN CHASE BANK N.A.; 1
UNNAMED/UNIDENTIFIED "CUSTOMER
SERVICE REPRESENTATIVE,

            Defendants.

22-CV-4994 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      On June 13, 2022, Plaintiff filed this *pro se* complaint under 42 U.S.C. § 1981, alleging that a bank teller in Florida refused to cash his paycheck, and a customer service representative in New York failed to assist him, because of Plaintiff's race. By order dated July 15, 2022, the Court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"). By order dated August 22, 2022, the Court granted Plaintiff 60 days to file an amended complaint, because the original complaint did not provide facts supporting a Section 1981 claim. (ECF 6.) On September 29, 2022, Plaintiff submitted a "Notice of Voluntary Dismissal . . . pursuant to Rule 41(a)(1)(A)(i)," and on October 3, 2022, the Court granted that motion and dismissed the complaint under Rule 41. (ECF 7, 8.)

      On October 11, 2022, Plaintiff submitted a "motion for repudiation and/or striking of voluntary dismissal order." (ECF 9.) By order dated January 13, 2023, the Court informed Plaintiff that if he wished to reopen this matter, he needed to file an amended complaint within 30 days. (ECF 10.) Plaintiff submitted an amended complaint on February 6, 2023, and the Court

directed the Clerk of Court to reopen this matter.[1] (ECF 11, 12.) The Court has reviewed the amended complaint, and dismisses the action for the reasons set forth below.

## BACKGROUND

**A.     This action**

The following facts are drawn from the original complaint. On January 31, 2022, Plaintiff "online deposited" his $873.64 paycheck through Chase, something he had previously done without incident. In the past, Plaintiff's check would clear after two days. In this instance, a Chase employee stamped on the back of the check, "Bad Check; Fraud Alert; Do not Cash I," and put a "10 day hold" on it. (ECF 1 ¶¶ 1-2.) According to Plaintiff, this occurrence was "preponderantly based on racial discrimination," and thus "violative of his federal civil rights." (*Id.*) Plaintiff did not identify his race in his pleading.

On February 1, 2022, Plaintiff "contacted Chase Bank customer service" five times. A bank representative said that because the "process of processing the check had started," there was "nothing [she] could do." (*Id.* ¶ 3.) Plaintiff "let the rep have . . . [a] 'piece of [his] mind,'" in "a lambasting and perhaps derogatory manner," and she "abruptly hung up." (*Id.* ¶ 4.) Plaintiff was unable to access the funds for ten days, which rendered him unable to pay bills and "worsen[ed]" his "hardship." (*Id.* at 6, 8.) Plaintiff invokes 42 U.S.C. § 1981, and also asserts, under the Court's supplemental jurisdiction, 28 U.S.C. § 1367, a state law claim of intentional infliction of emotional distress ("IIED"). (*Id.* at 3.) Plaintiff sought money damages. (*Id.*) After Plaintiff filed his complaint, he filed a motion to add two exhibits to his complaint — a copy of

---

[1] Plaintiff also filed a petition for a writ of *mandamus* in the Second Circuit. *See Smith v. J.P. Morgan Chase N.A.*, No. 23-953 (2d Cir. Dec. 28, 2023) (dismissing petition (???) without prejudice).

the back of the canceled check and a letter from Defendant stating that Plaintiff's check was held because it "required additional review." (ECF 5.)

By order dated August 22, 2022, the Court directed Plaintiff to amend his complaint because he did not identify his race or "provide any facts suggesting that his race was a motivating factor in what occurred, much less that, 'but for' his race, the events giving rise to this complaint would not have occurred." (ECF 6 at 3.)

In the amended complaint, Plaintiff invokes the court's federal question and diversity of citizenship jurisdiction, and asserts claims of race discrimination and retaliation, under 42 U.S.C. § 1981, a retaliation claim, under "42 U.S.C. § 2000," and a state law IIED claim. (ECF 11.) The factual allegations are similar to those in the original complaint, although Plaintiff explains what allegedly occurred at the bank branch the day before he deposited the check online. On January 29, 2022, Plaintiff went to his bank branch in Florida to cash his paycheck. (*Id.* ¶ III.) A Chase employee told Plaintiff that the check could not be cashed because the issuer of the check did not have a Chase account. (*Id.*) According to Plaintiff, he was given "two other patently pretextual reasons [why] they didn't cash the check," although Plaintiff does not state what the other two allegedly pretextual reasons were. (*Id.*) Plaintiff further asserts:

> Despite, the very police they called, to essentially suppress [his] complaints. But whom was, actually proactive in trying to remedy the ordeal. Until it was clear to the both of us. They just insisted on not cashing the check.[2]

(*Id.*) Plaintiff reiterates his assertion that after his experience at the bank, and attempting to deposit the check online, he spoke with an unhelpful customer service representative, whom he alleges was in New York. (*Id.*) Plaintiff seeks $250,000 in damages. (*Id.* at 8.)

---

[2] The original complaint filed in this case did not mention police involvement.

3

B.     **Prior action**

On May 31, 2022, approximately two weeks before Plaintiff filed this action, he filed a complaint arising from these same events in the United States District Court for the Middle District of Florida. *See Smith v. JP Morgan Chase Bank N.A.*, No. 22-CV-340 (M.D. Fla.) ("*Smith I*").[3] In the amended complaint filed in *Smith I*, Plaintiff asserted a federal claim under Section 1981, and an IIED claim under Florida law, alleging that "all or most of the events giving rise to the claim occurred" in Florida.[4] *Smith I*, ECF 23 at 4.

By order dated April 17, 2023, the *Smith I* court: (1) granted Defendants' motion to dismiss, holding that Plaintiff's amended complaint "fail[ed] to allege a direct or circumstance case of race discrimination,"[5] and failed to state an IIED claim under Florida law; and (2) granted Plaintiff leave to file a second amended complaint, warning him that the matter would be dismissed if he failed to file an amended complaint. *Smith I*, ECF 41. Plaintiff failed to file an amended complaint, and the court dismissed the matter. *Id.*, ECF 42, 43. Plaintiff filed a notice

---

[3] In the original *Smith I* complaint, Plaintiff acknowledged that at that time, he was told that the reason for the bank's refusal to cash his paycheck was the fact that he was carrying a negative balance in his account, or $3.65. *Smith I*, ECF 1 ¶¶ 3, 7. In its motion to dismiss, Chase alleged that Plaintiff's paycheck was not cashed due to that negative balance. *Smith I*, ECF 25 at 2. *See Anderson v. Rochester–Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 205 n.4 (2d Cir. 2003)) (noting that courts may consider matters that are subject to judicial notice, including court records.)

[4] By letter dated March 17, 2023, Plaintiff alerted the *Smith I* court about this case, which he labeled "related," No. 22-CV-340, ECF 35, but he did not alert this Court about *Smith I*.

[5] In that order, the *Smith I* court summarized Plaintiff's allegations about police involvement in the matter: after the police arrived, they "spoke with both employees and [Plaintiff]" in an attempt to resolve the dispute, but were unsuccessful, after which they left the bank, as did Plaintiff. *Smith I,* ECF 41 at 3.

of appeal, and the Eleventh Circuit dismissed the appeal for failure to pay the requisite fees, and denied as moot Plaintiff's request for mandamus relief.[6] No. 23-11426 (11th Cir. Aug. 18, 2023).

## DISCUSSION

### A.  Federal race discrimination and retaliation claims

To state a claim of discrimination under Section 1981, a plaintiff must allege facts showing that: "(1) [the] plaintiff[] [is a] member[] of a racial minority; (2) [the] defendant['s] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir. 2000). "[A] plaintiff must . . . plead . . . that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Thus, for a claim of race discrimination under Section 1981, "it is insufficient to merely plead that race was a motivating factor in the discriminatory action." *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474 (ALC), 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021) (citing *Comcast Corp.*, 140 S. Ct. at 1017-18).

Plaintiff also invokes "42 U.S.C. § 2000," which the Court construes as asserting a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a). Section 2000(a) prohibits discrimination in public accommodations on the basis of race, color, religion, or national origin. 42 U.S.C. § 2000(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

---

[6] Thereafter, Plaintiff filed a petition for a writ of *mandamus* in the United States District for the Northern District of Georgia challenging the dismissal of his appeal in the Eleventh Circuit. *See Smith v. Smith*, No. 23-CV-4808 (N.D. Ga. Nov. 6, 2023) (dismissing as frivolous action against Eleventh Circuit clerks), *recons. denied* (Jan. 3, 2024), *appeal pending*, 23-13994-G (11th Cir.)

accommodation, as defined by this section, without discrimination on the ground of race, color, religion, or national origin.")

As with the original complaint, the amended complaint contains no facts supporting Plaintiff's assertion that Defendants discriminated or retaliated against him because of his race. As a result, Plaintiff has not shown that his race, which remains unspecified, was a motivating factor in what occurred, much less that, "but for" his race, the events giving rise to this complaint would not have occurred. *See, e.g.*, *Calvino v. Chance*, No. 20-CV-346 (CM), 2020 WL 419814, at *2 (S.D.N.Y. Jan. 27, 2020) (allegations that homeless shelter staff disrespected a person for non-protected reasons could not support a claim under 42 U.S.C. § 2000a(a)); *Verhagen v. Olarte*, No. 89-CV-309 (CSH), 1989 WL 146265, at *1 (S.D.N.Y. Nov. 21, 1989) (holding that the *pro se* complaint did not state a claim under Section 2000(a), or any other antidiscrimination statute, because it was "long on conclusory language which tracks one statute or another, but short on specific allegations in support of the conclusory charges.")

Accordingly, Plaintiff's federal claims of discrimination and retaliation are dismissed for failure to state a claim on which relief may be granted.

**B.      Diversity of Citizenship Jurisdiction**

To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). "An individual's citizenship, within the meaning of the diversity statue, is determined by his domicile." *Johnson v. Smithsonian*, 4 Fed. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). Domicile is "the place where a person has his true fixed home and principal

establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998).

In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Courts generally "recognize[ ] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). Where a complaint does not contain facts suggesting that the amount in controversy exceeds $75,000.00, however, the Court is not required to presume that the bare allegations in the complaint are a good faith representation of the actual amount in controversy. *See Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible") (citing *Wood v. Maguire Auto. LLC*, No. 09-CV-0640, 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011), *aff'd*, 508 F. App'x 65 (2d Cir. 2013) (summary order)).

It is not clear from the amended complaint that this Court has diversity of citizenship jurisdiction of this matter. Plaintiff resides in Florida, and sues Chase Bank at its New York address, although Chase is a citizen of Ohio for diversity purposes. *See Gutierrez v. JP Morgan Chase Bank*, No. 09-CV-2257 (LAK), 2009 WL 1059636, at *1 (S.D.N.Y. Apr. 13, 2009) (recognizing that JP Morgan Chase Bank is a citizen of Ohio for diversity purposes); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) holding that for purposes of diversity jurisdiction, a national bank resides only in the state designated in its articles of association (and

not in each state in which it has branch offices)). Plaintiff names a customer service representative, for whom he provides a New York address, although it is unclear where that individual resides. While Plaintiff seeks $250,000 in damages, he provides no facts explaining why he is entitled to that amount of money.

Even if diversity of citizenship jurisdiction exists, or venue is proper here,[7] Plaintiff's allegations do not give rise to a viable IIED claim under New York law.[8] An IIED claim under New York law has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")).[9]

---

[7] Under 28 U.S.C. § 1391(b), a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In his pleadings submitted in *Smith I*, Plaintiff alleged that "all or most of the events giving rise to the claim occurred" in Florida. *Smith I*, ECF 23 at 4. The only allegation implicating this District is that Plaintiff spoke with a customer service representative in New York. (ECF 11 ¶ III.)

[8] When a federal district court sits in diversity, it generally applies the law of the state in which its sits, including that state's choice of law rules." *In re Coudert Bros. LLP*, 673 F.3d 180,186 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[9] As noted, the *Smith I* court determined that Plaintiff failed to state an IIED claim under Florida law. *Smith I*, ECF 41. New York law and Florida IIED laws contain similar elements. *See*

The Court acknowledges Plaintiff's frustration that the bank would not cash his paycheck, even though it had previously done so, and that a customer service representative with whom he later spoke was unhelpful. However, these facts do not give rise to a claim for intentional infliction of emotional distress. Nothing in the complaint suggests that Chase Bank or any of its employees engaged in the kind of "extreme and outrageous conduct" that is "beyond all possible bounds of decency" that would support a viable claim for intentional infliction of emotional distress. Plaintiff's allegations that he suffered mental anguish are insufficient because the other elements of such a claim are not present.

**C.      Denial of leave to amend and warning**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because better pleading would not cure the deficiencies in Plaintiff's amended complaint, the Court declines to grant Plaintiff an opportunity to file a second amended complaint.

Moreover, as noted, shortly before Plaintiff filed this action, he filed a substantially similar complaint in another court, arising out of the same events, which was dismissed for failure to state a claim. *Smith I*, ECF 41. In light of this, the Court finds that Plaintiff was or should have been aware of the deficiencies in his complaints filed in this action. *See Sledge v.*

---

*Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (noting that to state an IIED claim under Florida law, a plaintiff must show that the defendant's conduct was intentional or reckless; that the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community' and therefore does not "extend to mere insults, indignities, or false accusations.") (quoting *Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004).

*Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements).

Plaintiff is warned that, if he abuses the privilege of proceeding IFP, he could be ordered to show cause why he should not be barred from filing future actions in this court IFP without first obtaining permission from this court to file his complaint. *See Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) ("The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard.")

## CONCLUSION

Plaintiff's amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). All pending matters are terminated, and the Clerk of Court is directed to terminate them. (ECF 13, 14, 17.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated:  January 16, 2024
        New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge